## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| DAVID WINNER D/B/A DLW BUSINESS CONSULTANTS, LTD., individually, and on behalf of all others similarly situated, | |
| Plaintiff, | |
| v. | CASE NO. 20-cv-3515 |
| PNC Financial Services Group, Inc., | CLASS ACTION COMPLAINT |
| Defendant. | JURY TRIAL DEMANDED |

## CLASS ACTION COMPLAINT

Plaintiff David Winner d/b/a/ DLW Business Consultants, Ltd. (hereinafter "Winner" or "Plaintiff") brings this Class Action Complaint and Demand for Jury Trial against Defendant PNC Financial Services Group, Inc. (hereinafter, "PNC" or "Defendant"), seeking compensation for its refusal to pay him and a large number of other similarly-situated agents for the services they rendered to recipients of Small Business Administration ("SBA") loans, as required under the CARES Act. Winner alleges as follows upon personal knowledge as to himself and his own acts and experiences, and, as to all other matters, upon information and belief.

## NATURE OF THE ACTION

1. Congress passed the CARES Act on March 27, 2020 to provide economic relief to workers and small businesses suffering economic hardship due to the COVID-19 pandemic.[1]

---

[1] The spread of COVID-19 was declared a pandemic by the World Health Organization ("WHO") on March 11, 2020. On March 13, 2020, President Donald Trump issued the Coronavirus Disease 2019 (COVID-19) Emergency Declaration, which declared that the pandemic was of "sufficient severity and magnitude to warrant an emergency declaration for all states, territories and the District of Columbia." The Federal Government expressly recognized that with the COVID-19 emergency, "many small businesses nationwide are experiencing economic hardship as a direct result of the Federal, State and local public health measures that are being taken to minimize the public's exposure to the virus." SBA Interim Final Rule, 85 Fed. Reg. 20811.

Part of the CARES Act, known as the Paycheck Protection Program ("PPP"), was designed to keep small businesses afloat and avoid massive layoffs by distributing sufficient funds to cover up to eight weeks of payroll and other expenses through the Small Business Administration ("SBA"). 15 U.S.C. §636(a)(36). The initial bill authorized up to $349 billion in forgivable loans, and Congress subsequently added an additional $310 billion to the program.

2.      Congress provided that PPP loans would be disbursed through SBA-approved lenders, though the loans themselves would be guaranteed by the federal government. In exchange for their participation, lenders would receive a percentage of each loan as an origination fee. The amount of each loan would depend on the applicant's historical payroll information, and so Congress understood that applicants would often require the help of agents, such as accountants, to prepare the loan applications. But Congress did not want the process to be delayed by fee negotiations between lenders and agents, nor for small businesses already in economic distress to have to pay agents themselves. Accordingly, the PPP regulations provide that lenders will pay the agents a specified percentage of their origination fee; agents may not charge applicants for this work.[2]

3.      However, now that PPP loans have been disbursed to borrowers, PNC has refused to pay Winner and other similarly-situated agents their statutorily mandated fees. Accordingly, Winner brings this class action lawsuit to recover fees for the work he and other agents performed assisting borrowers with PPP loan applications submitted to PNC which should have been compensated for by PNC.

---

[2] SBA Interim Final Rule, 85 Fed. Reg. 20816 § (4)(c) (hereinafter, the "PPP regulations").

## PARTIES

4.      Plaintiff David Winner d/b/a/ DLW Business Consultants, Ltd. is an accounting firm with its principal place of business located in Chicago, Illinois.

5.      Defendant PNC Financial Services Group, Inc. is a national commercial bank headquartered in Wilmington, Delaware, with a place of business located at One North Franklin, Chicago, Illinois, 60606. PNC conducts substantial business throughout this District and the State of Illinois, and throughout the United States.

6.      In this Complaint, references made to any act of Defendant shall be deemed to mean that officers, directors, agents, employees, or representatives of the Defendant named in this lawsuit committed or authorized such acts, or failed and/or omitted to adequately supervise or properly control or direct their employees while engaged in the management, direction, operation or control of the affairs of the Defendant and did so while acting within the scope of their employment or agency.

## JURISDICTION AND VENUE

7.      This Court has subject matter jurisdiction over this action under the Class Action Fairness Act, 28 U.S.C. § 1332(d), because, as to the proposed Class and Subclass, (a) at least one member of the proposed Class, which consists of at least 100 members, is a citizen of a different state than PNC; (b) the claims of the proposed Class Members exceed $5,000,000 in the aggregate, exclusive of interest and costs, and (c) none of the exceptions under that subsection apply to this action.

8.      Personal jurisdiction over PNC is proper because PNC transacts business in the State of Illinois, and a substantial number of the events giving rise to the claims alleged herein took place in Illinois.

2000357.2

9.     This Court has jurisdiction to grant declaratory relief under 28 U.S.C. § 2201 because an actual controversy exists between the parties as to their respective rights and obligations under the PPP regulations as set forth in 85 Fed. Reg. 20816 § (4)(c).

10.     Venue is proper in this judicial District pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events, acts or omissions giving rise to the claim occurred in this judicial District, including work performed by Plaintiff on behalf of business clients within this District.

## FACTUAL ALLEGATIONS

11.     The PPP was designed to be fast and straightforward.  Small businesses could apply as early as April 3, 2020 – just four days after the bill was passed.  Businesses would be allowed to apply through SBA-approved lenders using applications based on historical payroll information.  Lenders would not have to verify the information themselves, but instead would rely on representations and certifications from the borrowers.  All of these measures were designed to avoid delay and provide economic relief to borrowers as quickly as possible.  And the lenders themselves were incentivized to cooperate because they would receive generous origination fees paid by the federal government, which would also guarantee the loans (which were mostly forgivable anyway, as long as they were used for approved expenses such as payroll and rent).  In other words, the lenders are paid very well and assume zero risk.

12.     Because small businesses were required to make truthful and accurate applications in the limited time they were given to submit those applications, Congress recognized that they would need assistance from professional accountants, tax preparers, financial advisors, and other such agents as small businesses normally rely on.  Congress explicitly provided that the Administer of the SBA would establish a limit on the fees that agents could collect for assisting borrowers with their applications.  15 U.S.C. §636(a)(36)(P)(ii).

- 4 -

13.     Congress also provided that lenders, such as PNC, would receive a certain percentage of the loans they originated: 5% for loans of not more than $350,000, 3% for loans of more than $350,000 and less than $2 million, and 1% for loans of at least $2 million. 15 U.S.C. §636(a)(36)(P)(i).  The SBA's PPP regulations specifically directed lenders to pay agents from these lender fees:

> *Who pays the fee to an agent who assists a borrower?*
>
> Agent fees will be paid by the lender out of the fees the lender receives from SBA. Agents may not collect fees from the borrower or be paid out of the PPP loan proceeds. The total amount that an agent may collect from the lender for assistance in preparing an application for a PPP loan (including referral to the lender) may not exceed:
>
> i. One (1) percent for loans of not more than $350,000;
>
> ii. 0.50 percent for loans of more than $350,000 and less than $2 million; and
>
> iii. 0.25 percent for loans of at least $2 million. [3]

14.     The SBA also put out an "Information Sheet for Lenders" which states: "Agent fees will be paid out of lender fees. The lender will pay the agent. Agents may not collect any fees from the applicant." [4]   The Information Sheet defines an agent broadly as "an authorized representative and can be: an attorney, an accountant, a consultant, someone who prepares an applicant's application for financial assistance and is employed and compensation by the applicant; someone who assists a lender with originating, disbursing, servicing, liquidating, or litigating SBA loans; a loan broker; or any other individual or entity representing an applicant by conducting business with the SBA."[5]  The PPP regulations do not require any specific form or process to be

---

[3] SBA Interim Final Rule, 85 Fed. Reg. 20816 § (4)(c).
[4] U.S. Dep't of Treasury, *Paycheck Protection Program (PPP) Information Sheet Lenders,*
https://home.treasury.gov/system/files/136PPP%20%20Lender%20Information%20Fact%20Sheet.pdf
[5] *Id.*

followed between the agent and the lender in order to qualify the agent to receive their portion of the fees.

15.     Both the agent and the lender were specifically forbidden by the PPP from charging small businesses any fees for loan origination or for assistance in preparing the loan application. Instead, the PPP provided that the lenders would be paid by the federal government, and the agents would be paid a portion of that amount by the lenders.  The SBA made its intent clear by going so far as to prescribe the specific amounts agents were to be paid by participating lenders.  By allocating fees for lenders to distribute to agents, the SBA protected small businesses, already distressed by the economic hardship due to the COVID-19 pandemic, from having to outlay money to access a PPP loan, to expedite the distribution of the loans, and to avoid negotiations between lenders and agents that would delay the loans and lead lenders to prioritize businesses that did not work with agents.

16.     PNC is a large national commercial bank.  PNC has reported more than 74,000 approved PPP applications totaling over $14 billion in loans.[6]  Accordingly, PNC garnered hundreds of millions of dollars in origination fees, from which it is required to pay agents who assisted the borrowers in preparing and submitting applications.

17.     PNC has refused to pay the agents.  This refusal is a company-wide policy.  PNC admits as much on the web page it established to provide information for the Paycheck Protection Program.[7]  At the bottom of the page PNC explicitly says that "PNC will not pay Agents for assistance they may provide an applicant in obtaining a PPP loan."[8]  PNC's stated policy directly conflicts with the instructions the SBA's provided for lenders regarding the payment of agent fees.  Instead of distributing the funds the SBA provided PNC for the payment of agents, PNC has decided to keep all of the money for itself.

---

[6] https://www.pnc.com/en/customer-service/paycheck-protection-program.html (last visited June 15, 2020).
[7] *Id.*
[8] *Id.*

18.     Further, when setting up their PPP application process, PNC deliberately failed to allow applicants who had been assisted by an agent a means to identify the agent.  PNC could have provided a place within the application for this purpose.  It could have directed applicants who had relied on an agent to include SBA Form 159, which the SBA provides for agent disclosure in connection with regular 7(a) loans.  But it did none of these things so that after the PPP loans had been disbursed, it could claim ignorance of the existence of the agent as an excuse not to pay the agent its share of the statutorily mandated fee.

19.     As a result of PNC's acts and omissions, Winner and many other agents were denied payment owed for work performed in enabling their clients to apply for PPP loans.  PNC's conduct is contrary to the purpose, spirit, and letter of the PPP and SBA rules.  Winner brings this case to recover damages for, and vindicate the rights of himself and similarly-situated agents harmed by PNC's conduct.

## PLAINTIFF DAVID WINNER d/b/a DLW BUSINESS CONSULTANTS, LTD.'S EXPERIENCE

20.     Plaintiff David Winner d/b/a/ DLW Business Consultants, Ltd., is an accounting firm located in Chicago, Illinois.

21.     Winner assisted several clients in securing PPP loans that were critical to their ability to survive the economic climate created by the COVID-19 pandemic.  He assisted three such client ("Clients") in securing loans through PNC.  Winner's work for Clients included advising them on eligibility requirements for PPP loans, calculating the payroll information needed for the application, reviewing the applications before filing, and providing documentation in support of the application.  He also worked to explain to his clients how the PPP funds were to be used upon distribution so that the loans would be eligible for forgiveness and the employees of those businesses could come back to work.  He helped prepare the applications so that PNC could easily verify the necessary financial data, thereby expediting Clients' loans.

22.     The Clients' loans were for approximately $150,000, $92,000, and $82,500, respectively; therefore, Winner understood that he would be paid approximately $3,245 in total fees from PNC after the loans had been disbursed.  Despite the fact that Winner's Clients had received the loans, and that Winner was eligible to have his fees paid by out of the funds allocated by the SBA to PNC for exactly that purpose, PNC's company-wide policy that it "will not pay Agents for assistance they may provide an applicant in obtaining a PPP loan"[9] denied Winner from receiving the fees he was due.

23.     Thus, PNC has enacted a company-wide policy that it will not pay fees to agents who have assisted borrowers in securing PPP loans, like Plaintiff.

24.     To date, Winner has not received any money for his work on Clients' PPP loan applications.  That work inured to PNC's benefit, because PNC was able to rely on Clients' verifications (made possible by Winner's work) to obtain approval for loans from which PNC received origination fees.  As a result of PNC's unlawful and unfair actions, Winner and the Class suffered financial harm by being deprived of the statutorily mandated compensation for their professional services assisting clients in obtaining PPP loans.

## CLASS ALLEGATIONS

25.     Plaintiff brings this class action on behalf of himself and the following Class:

> All persons and businesses in the United States who served as an agent in relation to, and provided assistance to a client in relation to, the preparation and/or submission of a client's PPP loan application to PNC Financial Services Group, Inc. which resulted in a loan being funded under the PPP.

26.     Plaintiff further brings this action on behalf of a subclass of individuals defined as follows:

---

[9] *Id.*

**Illinois Subclass.** All persons and businesses in Illinois who served as an agent in relation to, and provided assistance to a client in relation to, the preparation and/or submission of a client's PPP loan application to PNC Financial Services Group, Inc. which resulted in a loan being funded under the PPP.

27. Excluded from this Class and Subclass (hereinafter "the Class" unless otherwise indicated) are: (1) any Judge or Magistrate presiding over this action and members of their families; (2) Defendant, Defendant's subsidiaries, parents, successors, predecessors, and any entity in which Defendant or its parents have a controlling interest and its current or former employees, officers and directors; (3) persons who properly execute and file a timely request for exclusion from the Class; (4) persons whose claims in this matter have been finally adjudicated on the merits; (5) Plaintiff's counsel and Defendant's counsel; and (6) the legal representatives, successors, and assigns of any such excluded persons.

28. Plaintiff reserves the right to expand, limit, modify, or amend this Class definition, including the addition of one or more subclasses, in connection with Plaintiff's motion for class certification, or any other time, based upon new facts obtained during discovery.

29. Numerosity: The Class is composed of hundreds or thousands of agents ("Class Members") whose joinder in this action would be impracticable. The disposition of their claims through this class action will benefit all Class Members, the parties, and the courts.

30. Commonality & Predominance: This case presents common questions of law and fact, the answers to which will drive the resolution of the litigation, and which are capable of classwide resolution. These common questions of law and fact predominate over any individualized questions affecting individual Class Members, and include, but are not limited to, the following:

a. Whether PNC is obligated under the CARES Act and/or its implementing regulations to pay Class Members agent fees for their services assisting PPP loan applications;

b.      Whether PNC has a policy and/or practice of failing to compensate Class Members for their services assisting PPP loan applications;

c.      Whether PNC actively concealed from Class Members and the public that it had no intention of paying Class Members their agent fees pursuant to the CARES Act and its regulations, and if so, whether it is likely to continue to do so;

d.      Whether PNC's conduct was willful and knowing;

e.      Whether PNC was unjustly enriched by its conduct at the expense of Class Members;

f.      Whether Class Members are entitled to damages and/or restitution; and

g.      Whether Plaintiff and Class Members are entitled to an award of reasonable attorney's fees, pre-judgment interest and costs of suit;

31.      <u>Superiority</u>: This case is also appropriate for class certification because class proceedings are superior to all other available methods for the fair and efficient adjudication of this controversy given that joinder of all parties is impracticable. The damages suffered by the individual members of the Class will likely be relatively small, especially given the burden and expense of individual prosecution of the complex litigation necessitated by PNC's actions. Thus, there are practical hurdles to the ability of individual members of the Class to obtain effective relief from PNC's misconduct. Even if members of the Class could sustain such individual litigation, it would still not be preferable to a class action, because individual litigation would increase the delay and expense to all parties due to the complex legal and factual controversies presented in this Compliant. By contrast, a class action presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and

2000357.2

comprehensive supervision by a single court. Economies of time, effort and expense will be fostered and uniformity of decisions ensured.

32.     Typicality: Plaintiff's claims are typical of the claims of all Class Members, in that Plaintiff and Class Members sustained damages arising out of PNC's uniform unlawful conduct.

33.     Adequacy: Plaintiff will fairly and adequately represent and protect the interests of the Class and has retained counsel with substantial experience in litigating complex cases, including consumer fraud and class actions. Both Plaintiff and his counsel will vigorously prosecute this action on behalf of the Class and have the financial ability to do so. Neither Plaintiff nor counsel has any interest adverse to other Class Members; rather, Plaintiff shares the same interest as all Class Members in remedying PNC's uniform unlawful conduct.

34.     PNC has acted, and refused to act, on grounds generally applicable to the Class, thereby making appropriate final equitable relief with respect to the Class as a whole.

**CAUSES OF ACTION**

**COUNT I–DECLARATORY RELIEF**

35.     Plaintiff incorporates by reference each preceding and succeeding paragraph as though fully set forth at length herein.

36.      Plaintiff and the Class are "agents" as defined by the SBA regulations for the PPP.

37.     Plaintiff and the Class have assisted clients with the process of preparing applications, and applying for, PPP loan funds. PNC, despite the clear command of the PPP regulations, has refused to make these payments. An actual controversy has arisen between Plaintiff and the Class, on one hand, and PNC on the other, wherein PNC denies by its refusal to

pay that they are obligated to pay Plaintiff's and the Class's "agent" fees pursuant to PPP regulations.

38.    Plaintiff and the Class seeks a declaration, in accordance with the CARES Act and the PPP regulations and pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201, that PNC is obligated to pay agents –within the SBA-approved limits—for the work performed on behalf of a client in relation to the preparation and/or submission of a PPP loan application that resulted in a funded PPP loan.

## COUNT II–VIOLATIONS OF ILLINOIS CONSUMER FRAUD AND DECEPTIVE BUSINESS PRACTICES ACT, 815 ILCS 505

39.    Plaintiff incorporates by reference each preceding and succeeding paragraph as though fully set forth at length herein.

40.    Plaintiff and the Class are "agents" within the meaning of the PPP regulations.

41.    In order to constitute an unfair practice under the Illinois Consumer Fraud and Deceptive Business Practices Act (hereinafter "ICFDBA"), the practice must either offend public policy; be immoral, unethical, oppressive, or unscrupulous; or cause substantial injury to consumers.

42.    PNC has violated the ICFDBA by engaging in unfair practices by circumventing and ignoring its obligations to comply with the agent fee payment requirements under the PPP regulations.

43.    PNC engaged in lending to businesses under the PPP and thus is required to abide by the rules and obligations set forth in the PPP regulations.

44.    Plaintiff and Class Members engaged in helping clients apply for PPP loans with the understanding, consistent with the PPP regulations, that while they were not permitted to

charge their clients fees for their professional services in assisting in compiling the applications, they would be able to obtain as compensation the mandated agent fees from the lenders.

45.     PNC is well aware, or should have been well aware, of the mandated agent fees owed to agents under the PPP regulations.

46.     PNC's unfair practices occurred during the course of the application process when Plaintiff and Class Members rendered services to their clients in anticipation of being paid the mandated agent fees by the lenders, only to be denied all of the agent fees owed under the PPP regulations.  Failure to adhere to the PPP regulations is the proximate cause of Plaintiff's and the Class's damages, and has had a broader impact on consumers and the public at large.

47.     PNC's deceptive and misleading acts and practices have harmed the public because they have interfered with the Congressional goal of assisting small businesses and avoiding negative repercussions to the economy insofar as Plaintiff and the Class Members are themselves small business, and have lost money.  Defendants' conduct has also interfered with Congressional goals and harmed the public by making it more burdensome for agents to assist clients in obtaining federal government funds under the CARES Act, because they have been forced to litigate to recover payment for the work they performed.  Further, the agency fees to which Plaintiff and the Class are entitled are paid directly from the income taxes of Illinois, and the public at large. Thus, the refusal of PNC to pay agent fees for their assistance in obtaining PPP loans in accordance with PPP regulations for their clients during an economic crisis is a matter of the public interest of tax-payers.

48.     These acts and practices are unfair because PNC withheld monies owed to Plaintiff and the Class that were clearly provided for pursuant to the PPP regulations.

2000357.2

49.     By committing the acts and practices alleged above, PNC engaged in unfair business practices within the meaning of the ICFDBA.

50.     Through their unfair acts and practices, PNC has improperly obtained money from the Federal Government at the expense of Plaintiff and the Class. As such, Plaintiff requests that this Court cause PNC to disgorge this money to Plaintiff and all Class Members, enjoin PNC from continuing to violate the ICFDBA as discussed herein, and award Plaintiff such other damages and relief this Court deems just and proper. Plaintiff, the Class, and members of the public will be harmed and/or denied an effective and complete remedy if such an order is not granted.

## COUNT III CONVERSION

51.     Plaintiff incorporates by reference each preceding and succeeding paragraph as though fully set forth at length herein.

52.     Under the PPP regulations, Plaintiff and the Class, as PPP agents, have a right to agent fees that must be paid from the amount of lender fees provided to PNC for processing the funded PPP loan applications of Plaintiff's client and the Class's clients.

53.     The PPP regulations state that "[a]gent fees *will* be paid out of lender fees" and provide guidelines on the amount of agent fees that should be paid to the PPP agent, based upon the size of the PPP loan.

54.     Additionally, the PPP regulations require that lenders, not loan recipients, pay the agent fees. The PPP regulations unequivocally state that "[a]gents may not collect fees from the applicant."

55.     Plaintiff and the Class assisted clients with applying for PPP loans, including gathering and curating information necessary for completing PPP loan applications that were subsequently funded. Due to Plaintiff's and the Class's efforts, their clients were awarded PPP

loans, through applications made with PNC. As such, Plaintiff and the Class have a right to immediate possession of the agent fees.

56.     PNC has nonetheless refused to provide those fees to Plaintiff and the Class, thus keeping the agent fees that were paid to it for purposes of being passed on to the agents. By withholding these fees, PNC has maintained wrongful control over Plaintiff's property inconsistent with Plaintiff's entitlements under the PPP regulations.

57.     PNC committed civil conversion by retaining monies owed to Plaintiff and Class Members.

58.     Plaintiff and the Class have been injured as a direct and proximate cause of PNC's misconduct. Plaintiff, as such, seeks recovery from PNC in the amount of the owed agent fees, and all other relief afforded under the law.

## COUNT IV – UNJUST ENRICHMENT

59.     Plaintiff incorporates by reference each preceding and succeeding paragraph as though fully set forth at length herein.

60.     PNC has obtained millions of dollars in benefits in the form of PPP loan origination fees. A portion of those fees were to be paid to agents, including Plaintiff, who assisted in their clients' PPP loan applications. But PNC is refusing to pay those fees, in contravention of PPP regulations and to the detriment of Plaintiff and the Class.

61.     Principles of justice, equity, and good conscience demand that PNC not be allowed to retain these agent fees. PNC has fallen short in its duties as a lender, and has frustrated the Congressional intent to aide small businesses during a time of a global health crisis.  As a result, Plaintiff and the Class Members have been unable to obtain the agent fees due to them.

62.     Accordingly, PNC must disgorge the portion of any and all PPP origination fees that it has retained to the extent they are due to Plaintiff and Class Members in their capacities as agents.

## COUNT V – QUANTUM MERUIT

63.     Plaintiff incorporates by reference each preceding and succeeding paragraph as though fully set forth at length herein.

64.     Plaintiff brings this cause of action on behalf of himself and all others similarly situated, seeking "to recover the reasonable value of services which have been nongratuitously rendered, but where no contract exists to prescribe exactly how much the renderer should have been paid." *In re Estate of Etherton*, 284 Ill. App. 3d 64, 68 (1996) (internal citations omitted).

65.     Plaintiff and the Class Members performed services that benefitted Defendant PNC, assisting clients with applying for PPP loans originated by PNC, including gathering and curating information necessary for completing PPP loan applications.

66.     The benefit conferred upon PNC for the services performed by Plaintiff and Class Members were the substantial loan origination fees and other lender fees charged and obtained by PNC from the PPP program, amounts that in the aggregate totaled hundreds of millions of dollars.

67.     Plaintiff and the Class Members did not perform their agent services gratuitously, but performed the services that benefitted PNC with the reasonable understanding and expectation that they would be compensated for these services, pursuant to the plain terms of the PPP program regulations.

68.     Defendant PNC accepted the loan agent services performed by Plaintiff and the Class Members, and accepted the benefits of those services.

2000357.2

69. No contract existed to prescribe payment for the loan agent services rendered by Plaintiff and Class Members.

70. The circumstances are such that it would be unjust for Defendant to retain the valuable and non-gratuitious services of Plaintiff and Class Members without paying for them, where Defendant PNC derived a substantial benefit from those services – the ability to originate PPP loans that resulted in hundreds of millions of dollars in lender fees.

71. As a consequence, Plaintiff and Class Members are entitled to damages in the form of the reasonable value of the work performed, in an amount to be determined at trial.

## DEMAND FOR JURY TRIAL

72. Plaintiff demand a trial by jury on all issues to the fullest extent permitted under applicable law.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff David Winner d/b/a/ DLW Business Consultants, Ltd., individually and on behalf of the Class, respectfully prays for the following relief:

(a) An order certifying the Class as defined above, appointing Plaintiffs as the representatives of the Class, and appointing their counsel as Class Counsel;

(b) An order declaring that PNC's actions, as set out above, constitute unjust enrichment, conversion, misappropriation, and violate the ICFDBA, and violate the SBA's PPP regulations;

(c) An award of all economic, monetary, actual, consequential, compensatory, and punitive damages available under the law and caused by PNC's conduct, including without limitation, actual damages for past, present and future expenses caused by PNC's misconduct, lost time and interest, and all other damages suffered, including any damages likely to be incurred by Plaintiff and the Class;

(d) An award of reasonable litigation expenses and attorneys' fees;

2000357.2

(e) An award of pre- and post-judgment interest, to the extent allowable;

(f) The entry of an injunction and/or declaratory relief as necessary to protect the interests of the Plaintiff and the Class; and

(g) Such other further relief that the Court deems reasonable and just.

Dated: June 16, 2020

Respectfully submitted,

LIEFF CABRASER HEIMANN & BERNSTEIN, LLP

By: /s/ *Jonathan D. Selbin*
    Jonathan D. Selbin

N.D. Illinois Bar No. 3948684
250 Hudson Street, 8th Floor
New York, New York 10013-1413
Telephone: (212) 355-9500
Facsimile: (212) 355-9592

Michael W. Sobol*
Roger N. Heller*
Anne B. Shaver*
275 Battery Street, 29th Floor
San Francisco, CA 94111-3339
Telephone: (415) 956-1000
Facsimile: (415) 956-1008

Gary Klinger
Illinois State Bar No. 6303726
MASON LIETZ & KLINGER LLP
227 W. Monroe Street, Suite 2100
Chicago, IL 60606
Telephone: (202) 429-2290

*Attorneys for Plaintiff David Winner*

* *Pro Hac Vice* application to be submitted